As I understand it, Mr. McNamara, is that correct, is that correct, Mr. McNamara, yes? Yes. That's correct, Your Honor. You have asked for five minutes of rebuttal? Yes, please. All right, you may begin. May it please the Court, Stephen McNamara for the appellant. The Trademark Trials and Appeals Board, in the mental error of cases, effectively created a non-rebuttable inference of fraud, in any case, where there was a false statement. And that per se rule of fraud effectively continued until this Court's Bowes decision, when in 2009 the Court ruled that the notion that the TTIP was applying was incorrect. And ever since then, the Board has declined to find fraud in a single case, effectively turning 180 degrees from a per se fraud rule to a rule that required an actual proof of intent, an affirmative evidence of intent, and without giving any weight to any sort of inference or presumption. So how do you get around Bowes? How do you get around Bowes? Bowes is a perfectly fine case. It's correctly decided on its facts, and it holds within it the seeds of what the TTIP should be doing now, but it's been reluctant to do, which basically says, in an appropriate case, you review the evidence, you make an inference based on what is presented, the objective facts, and you may make an inference of fraud. And Bowes does particularly express that, but the TTIP has been reluctant to do that. And perhaps it's an appropriate time to remind the TTIP that that inference still can be made. It can be rebutted, unlike in the methanol era of cases when the TTIP did not really entertain any sort of rebuttal, and that a normal sort of evidentiary process should apply in the same way that we apply federal rules of evidence, Rule 301. If an inference or a presumption may arise in the case of some facts are shown, then the other party has the burden of going forward with evidence to rebut the presumption. The ultimate proof still lies with the party that's presenting the argument, but there's at least a burden to come forward with some sort of rebuttal to the evidence that's… Do you have any support for this notion that it's a burden-shifting framework? I mean, clearly, you can make an argument that you can infer intent from the fact that it was knowing, but you seem to argue for this burden-shifting, and I just don't see any case law to support that. I don't think there is any case law on this issue of intent that has really raised the issue before, and it seems sort of, if you will, in the older CCPA cases that there was an inference was made based on a false statement, and there was really not a whole lot further discussion of what was the process for evaluating that inference that was made, and perhaps this case is an opportunity to discuss what would be an appropriate process for processing. What's our procedure for this inference? How are we going to evaluate what it means? How are we going to make a judgment whether this inference should stand as inference of an intent, or whether it should fall because there's some contrary evidence, and perhaps we take this inference and we take some other evidence and we put it all in a bucket and we make a judgment. Perhaps we're going to have a shifting presumption-type analysis such as we use in abandonment cases and trademarks where a party might say, okay, we've got three years of non-use. That's a presumption of abandonment, and it has to be rebutted by the other party, or in patent cases, the latches presumption that we have six years of non-use is a presumption of latches, and then the other party has to come forward with evidence to rebut that. That might be an appropriate process to use, and that's what we've proposed in this particular case, but you're right. It hasn't been done. No other circuit have you seen issues like this where there's a presumption of fraud? I have to confess I haven't looked into the, if you will, criminal side of the case law where you have evidence of criminal intent of some sort and how that might get rebutted, but that might be an interesting avenue to look into. I tried to look into that a little bit, but didn't really find anything. In the same way where you have issues of intent and fraud in the financial transactions, we had the robo-signing series of scandals now, and I don't know what the intent process was applied there. I think at some point we have this inference of intent that we need to decide how we're going to use it, and that's the purpose of the discussion today. Even if you're correct that knowingly making a false statement gives rise or would be sufficient to create an inference of intent to deceive, it's still up to the board to say whether or not in the totality of those circumstances that there's anything to undercut that inference or to rebut that inference. Even if we would accept your proposition, didn't the board at least have the fact of them coming back in to cancel their registration? Even if I wouldn't think it was enough, don't I have to defer to the board's decision that that was enough? I don't think you need to defer to the board's decision in the sense of that. I think that's a legal issue that's reviewable de novo, but addressing that particular evidence that they relied on, I think you have two different... Why is it a legal issue when... I mean, I'll agree that it mixes law and fact, but when they're making a determination of intent, why isn't that a factual issue as opposed to purely legal? Because I think there's no fact-finding that took place in this particular case where there's no direct evidence of intent, there's no testimony. The sole finding is an inference of no intent that was made by the TTIP based on the fact of a Section 7 amendment to correct the over-claiming of goods in the registration and that filing arose... But it's an evidentiary conclusion as opposed... Otherwise, all determinations made from evidence would be legal determination. It's a relevance determination, and what's a justifiable inference determination, and I think that's a legal issue, but I defer to you, certainly. And in this particular case, I mean, the 2007 amendments have a couple of different aspects to them. It's not a cure issue because you can't cure a fraud in what's already occurred, but it's been argued that this is evidence... The filings in 2007 were evidence that back in 2006 that the intent was innocent, that it was not a fraudulent intent at the time. And so we're making inference based on the 2007 filings of what the intent was back in 2006. And I think in this case, even conceded in Unity Closing's briefs, that we don't... It's hard to know what the meaning of this Section 7 amendment was. Was it made in order to cover up a fraud? Was it made in order to avoid litigation? Was it a reflection of an innocent intent? We don't really know because it took place after the deficiency had been called out by letter from the Clarks saying, hey, your trademark registration seems to have a defect of over-claiming, and we think there's fraud. If that correction had occurred perhaps before notice of some... Then I think it's a reasonable correlation to say, well, the 2007 amendment shows... Then you've placed yourself on a continuum of interpretation of evidence, and you're putting... running us up against TTAP's determination. I think that's where your... Well, your basic problem lies with Bose. I mean... And of course we're... The three judges here are bound by stare decisis. Yes, but Bose does not necessarily prevent making a presumption. It doesn't prevent weighing what are appropriate presumptions to make in view of the objective evidence. And I think that is an appropriate subject for a series of cases to elaborate on what is where the lines are, what is reasonable and not as reasonable. It certainly takes something that would have been considered a trait prior to it and changes it. I'll give you that. Yeah. And the... In this particular case, I mean, it's a very sparse record as typical of TTAP proceedings, and it's almost a law school exam. And so, you know, if hard cases make bad law, this is a very simple case, and maybe it's an opportunity to make good law. Why didn't you ask the ultimate question? And you've got your request to admit. Why didn't you ask the question? You know, did you intend to mislead the board? Well, if we had asked it, then we would not have this appeal and this interesting question to address, that's for sure. But because at the time, it seemed inconceivable that anyone would admit to that. So why ask a question that you know what the answer is already going to be? But of course, they were all being admitted, weren't they? Yes. And so that is, you know, we wouldn't have this interesting appeal if that had been the case. And in the same way, we chose not to take testimony of Unity Clothing's president, waiting to see if they would come forward with that evidence. And so we have a very sparse record, and it lends itself to some kind of decision, I think. I note that the discovery closed before Bose came out. Once Bose came out, why didn't you ask to reopen discovery for purposes of pursuing that issue? At the time, we had the established request, unanswered request to admit, and that seemed to be a good enough record that it was worthwhile to proceed with briefing. Okay. All right, thanks. Mr. Christensen? Thank you, Mr. Court. My name is Vaughn Christensen on behalf of Unity Clothing, Inc. This case provides an opportunity for this court to reaffirm the requirements set forth in In Re, Bose that an intent to deceive the PTO is an essential element of a trademark fraud claim, and that it must be proved by clear and convincing evidence. As Appellant acknowledged in the briefs, Appellant has failed to provide evidence to support the intent to deceive the PTO element of the claim, and instead seeks to rely on the other elements of a fraud claim to be allegedly sufficient to imply or infer the intent to deceive. And thus, Appellant has failed to satisfy the intent to deceive the PTO element of the claim, and therefore, the board's decision should be upheld, and Appellant's petition for cancellation should be dismissed. Let me ask you a question. I mean, you argue that your opponent reads Taurus too broadly. Isn't it possible that you're reading Bose too broadly? I mean, I understand that they say you have to have an intent to deceive, but if you look at page 4 of Bose, where the court was talking about Taurus and talking about the case law that Taurus was bound by, and then in fact says, in fact, they still bind us because they've never been overturned on bonds, it cites repeatedly to the proposition that fraud occurs when an appellant knowingly makes false material representations. And it says that as long as it is knowingly made or knowingly misleading. As I read Bose, what it was really concerned about was doing away with the concept that should have known would be enough. I would say that that was part of its concern was to do away with the should have known. It was concerned that the other decisions had lowered the standard to a mere negligence standard, and that Bose was seeking to return the standard to the proper intentional tort standard, which that essential element is an intent to harm, or in this case, an intent to deceive the patent and trademark office. That intention, I think, is what Bose Court was most concerned had been lost. Right, but that's what I'm trying to understand. It's clear from our case law pre-Bose, which Bose itself says it's bound by, that as long as it's knowingly false, that that would be enough to establish the intent in the absence of any evidence to the contrary. The key provision that everyone cites to is where it says that we hold that a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false material representation with the intent to deceive the PTO. The discussion and reference to the Torres case was dicta. That statement was the holding, and so the way that I'm reading Bose is it acknowledges many of the good holdings statements that have been cited in prior cases, such as the Torres case, indicating there needs to be a knowing misrepresentation, but that it also sought to clarify the requirement that there be an intention, that there be an intent to deceive the PTO. And how would one prove that? I mean, no one's going to say, oh yeah, I really meant to lie, but if it's clear that they knew and they submitted it anyway, and here what we have is an actual admission that I knowingly submitted false information to the PTO. So all you have to do is say, well, yeah, I knowingly submitted false information, but I didn't really understand that I couldn't lie. I mean, under your theory, it seems that you could never establish fraud. And I certainly don't think that is the case. We do have several cases that illustrate and uphold a finding that there was an intent to deceive. I would suggest... 650F3-1139, a 2011 decision. In that decision, the jury did find that there was an intent to deceive regarding a requested trademark referred to 3002850 mark, which is a reference to credit scores. The parties sought to register that mark. And they upheld it, and in that particular instance, the jury had no more evidence of an intent to deceive than you have here. It simply had that it was knowingly false, and they just said, you can't just, you know, they rejected the explanation. And here, but it appears that the board never rejects the explanation. And here, they didn't even give you an explanation, at least not one that was admissible. You sort of came up with an explanation. Well, came up with the explanation. It was an explanation that the client had provided in response to a motion for summary judgment. But not in a declaration form. It was lawyer argument, period. It was, and so that really goes to the question, who bears the burden of proof? And under Bose, it's clear that the burden of proof lies on the petitioner, the one seeking to cancel. The burden of proof to prove intent to deceive is on them. What other reasons might there be to submit an unknowingly false application? Well, the Bose decision itself recognizes that, you know, false statements are not always fraudulent statements, and that knowingly false submission can be a mere misunderstanding, an inadvertence, a mere negligent omission or the like. But isn't intent, subjective intent inherently solely within the position of your client? Perhaps, but I think that begs the question, why didn't the petitioner take the deposition of my client? You know, why wasn't, why weren't there any discovery requests asking regarding the intent? Appellant is seeking to shift that burden and the presumption of innocence on that element to my client to make it a rebuttable presumption of guilt. Were you counsel below? I was. The client was initially unrepresented and we came in after. When the requests for admission were not responded, were you involved in the case? We were not. So the client was unrepresented until after the record had closed. I was going to ask you if that was an intentional decision, but without counsel. Yes. And so to the question of, you know, why should I, I think really the salient question is why should this court uphold that Boe's decision and find that there is the requirement of intent. And to that point, I would suggest that, first of all, as recognized by the Boe's court, a fraud claim, whether it be trademark fraud or any other type of fraud, does require a showing of intent. And therefore, it is an essential element. But Boe's doesn't say anything about how you show intent. In fact, in Boe's, the facts were very, very different because we had an affirmative defense of good faith. And so they said where you have that defense of good faith, you can't just assume that there's fraud. You have to look at that defense. I mean, that's, I don't, so Boe's doesn't speak to the facts we have here where there's no affirmative showing of good faith or no even evidence of good faith. You know, and that goes to, you know, the point again, so who bears the burden of bringing forth the evidence? And, you know, what I would say is, you know, I don't argue that Boe's sets forth exactly what's required to satisfy in order to show that there is evidence of an intent to deceive. You are claiming that there's a later filed cancellation. Does, is evidence relevant to good faith? Are you not? Absolutely. And so, you know, we do argue that the later request to amend and remove some of the items at issue does show an intent to, you know, to correct the issue, that there wasn't an intent to deceive, that it was, as Boe's acknowledges as adequate, there was a misunderstanding or there was some sort of inadvertence involved. And so there was, I would suggest that there is at least some evidence that weighs in favor of the fact that the client did not have an intent to deceive because it did seek to correct that registration. And so another point that I'd like to bring out is the fact that this is a fraud claim, which does have a heightened standard of review or a heightened burden of proof, requires clear and convincing evidence, which again, appellant is seeking essentially to lower that standard, to return it to something that's more along the lines of a negligent standard rather than the intentional standard. Well, given the fact that there's no way that the appellant or the counsel could have been aware of Boe's at the time that this matter was initiated and at the time the request to admit were submitted, wouldn't it make sense for us to remand and to allow an opportunity for us to define Boe's clearly in what it says and then to remand and allow an opportunity for more discovery if that's needed? So to that point, Boe's decision came out in August of 2009. The requests for admission were not deemed admitted until December of 2009. And so the discovery did not close until after the Boe's decision came out. So they were not deemed admitted until when? Until December of 2009. So 30 days, so were they served in November? So they had actually been served earlier in the year, I believe in April, and the parties had to stay on the proceeding due to settlement discussions. And part of the difficulty is the client being unrepresented didn't realize that discovery reopened automatically after six months and therefore failed to respond after the reopened discovery. But the Boe's decision did indeed come out prior to the close of discovery and even prior to the admissions having been deemed admitted. And so I would suggest that the opposing counsel was indeed on notice of Boe's requirement. If you know, what is the exact calendaring of that? That is, when did the settlement negotiations interrupt the proceeding? I know that the settlement stay began in April of 2009 and it was stayed until October of 2009. I don't have the exact dates right here. But I believe it reopened in October and my client at that time had about a month left to respond and to do so. The last point that I'd like to make is the nature of the relief that appellant is seeking, which is that they are seeking to not merely amend the registration to correct it because that's already occurred. They're seeking to outright cancel this trademark. And even though it's undisputed that the trademark is valid, it was properly granted for 40 different items of clothing. The dispute is over these several items and I believe, as indicated in our papers, that many courts, including the Boe's Court, recognizes that the proper remedy for those situations, absent a proof of intent to deceive the PTO, is to simply amend the registration so that it reflects the proper and correct manner. Why did your client not do that when it was first requested? Why did he not even respond to the letter? I don't know why he didn't respond to the letter, but he did within days request amendment of the registration after receiving the letter. That initial amendment occurred within just several days. It still left footwear in there. It did, which the client, and it is in the record, represents that it was an inadvertence. He intended to remove footwear, which is why he removed the beach footwear and sports footwear, but inadvertently left footwear in. You could read that just the opposite way. Footwear covers everything, so he made it look like he was doing some amendments, but really left it very broad. Which is true, and that's where it comes back to who bears the burden of proof there, because I would say it's impossible to tell whether it's more likely than not that he intended to leave it in, or if it was an inadvertence. It really is unclear, and I would suggest that it was appellant's burden to prove that it was, in fact, intentional, as opposed to an inadvertence, and they failed to do so. Okay. Anything else? No. Thank you. You've got three and a half minutes left for rebuttal. Thank you, Your Honor. In the discovery period, these requests to admit were served on April 1. On, I believe, April 4, a motion to suspend proceedings was filed by Unity Clothing for a six-month period until October 1.  The motion to suspend was filed after the close of discovery, so there were served discovery requests that were pending, discovery closed, and the suspension was granted. So, when they came back in out of suspension, the responses to the discovery were still due at that point. What is the point of all this? I mean, does Clarks really feel the need to use the mark without the structured portion, or is it just a matter of principle? It was basically because the UN logo is used identically. Actually, it's in the sole of the shoes I'm wearing today, as the UN and the circular thing as a trademark that identifies the brand. Now, granted, this has now been pending for a good six or seven years, so, of course, shoe companies move in and out of branding. But it's still part of the line, although certainly less of now than it was six years ago. And they do like to have a trademark registration for all of their logos for purposes of registering with customs to seize counterfeits and all the useful things that you can do when you have a trademark registration. But didn't the board say in rejecting the counterclaim that there's no likelihood of confusion between the two, so you could continue to do what you wanted to do? Well, separately and outside this record, there was a claim by Unity Clothing that the use of the UN on footwear was an infringement of their trademark rights in UN. And so we also have an interest in canceling the registration as a defensive step to say, well, if you say you're infringing your trademark, but you obtained that fraudulently, and you don't have a trademark registration anymore, that you should be asserting against us. So there's also that issue as well. Okay. Anything else? I think as you pointed out, proving subjective intent is difficult and that we do have to rely on inferences frequently. And Bo's case says we can. And the Bo's case explicitly states that intent can be inferred from indirect and circumstantial evidence. And historically, prior to the Bo's case and in cases such as Taurus, the inference has been made of the necessary intent to prove fraud. And so I think that's all that needs to be done in this case is to remind ourselves that Bo's doesn't rule out the existence of fraud. And the board needs to be reminded of that because a number of their rulings, such as Information Builders, Daimler Chrysler, essentially allow an applicant to sign this application under penalty of perjury with no risk of any sort of damage or any sort of loss of their trademark, despite making these false statements under oath. And this needs to be addressed. Thank you. Thank you.